J-S88031-16

2017 PA Super 39

| IN THE INTEREST OF: L.E.A-M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- |
| APPEAL OF: J.A-M., UNCLE | No. 1984 EDA 2016 |

Appeal from the Order Entered May 26, 2016,
in the Court of Common Pleas of Lehigh County,
Juvenile Division, at No(s): CP-39-DP-0030-2016

BEFORE:  OLSON, RANSOM, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:          **FILED FEBRUARY 16, 2017**

J.A-M. (Maternal Uncle), appeals from the order entered May 26, 2016, in the Court of Common Pleas of Lehigh County, which denied his petition to declare L.E.A-M (Child) dependent.  After careful review, we affirm.

The juvenile court set forth the pertinent background as follows.

> [C]hild was born [in June 1998], in El Salvador, and lived with his mother [in El Salvador] until 2015.  His father resides about  fifteen minutes' walk from his mother's house.  [C]hild's mother works as a domestic, and his father works in agriculture. [C]hild had his own bedroom at his mother's house.  He has good relationships with both his parents. [C]hild testified that "It was good" to live with his mother, and bad only because "she wasn't able to protect [him] from all the bad things."
>
> On October 5, 2015, [Child] left his mother's home.  He testified that he left El Salvador because "all the kids from 17 on, 17, 18, they want to recruit you for their gangs.  And if you don't accept, they will kill you."
>
> [C]hild was afraid of the gang efforts at recruitment. … [C]hild testified that his mother and father decided he should leave El Salvador.  He then went on to describe the path he took

---

* Retired Senior Judge assigned to the Superior Court.

to the United States, beginning with "when I left my mother gave me some money so I can- I can leave by bus and [ask] for rides until I get there." He traveled through El Salvador and surreptitiously crossed the border to Guatemala. "[In Guatemala,] I looked for a bus that would say that it would get close to Mexico." [Child] then travel[ed] through Guatemala into Mexico. [Child] is unclear about the entry into Mexico. [Child] then swam into the United States. He was detained by federal authorities and released to [Maternal] Uncle in Allentown[. Child testified that] "my mother asked [Maternal Uncle] if he could- if he could take care of me here."[1] Neither his mother nor his father has visited [Child in the United States]. However, [C]hild talks to his father three times a week. [C]hild feels well cared for by [Maternal Uncle. Maternal Uncle] buys him clothing, food, provides him with his own room, and sends him to school. [Maternal Uncle] is a legal resident of the United States, and [Maternal Uncle's] wife is a United States citizen.

Juvenile Court Opinion, 7/25/2016, at 1-3.

On February 11, 2016, Maternal Uncle filed an application requesting permission to file a private dependency petition. The juvenile court granted permission to file. A hearing was held on May 13, 2016. Following the hearing, on May 26, 2016, the court entered its order denying Maternal Uncle's petition. Maternal Uncle, joined by Child's parents, filed a joint

---

[1] By way of further background, Maternal Uncle avers that once Child entered the United States, he was immediately taken into custody by the Department of Homeland Security. Maternal Uncle's Brief at 7.

After [] Child was detained in the United States, [Child's] Mother contacted [Maternal Uncle.] [Maternal Uncle] had no prior knowledge that [] Child was coming to the United States. However, [Maternal Uncle] agreed to sponsor [] Child during the pendency of his removal proceedings. Since that time, [Maternal Uncle and his Wife] have stood *in loco parentis* to [] Child and have fully assumed all parental obligations owed to [] Child.

*Id.* at 7-8.

motion for reconsideration on June 1, 2016. The motion was denied and this timely filed appeal followed.[2]

Maternal Uncle now raises the following issue for our review.

1. Whether the lower court erred in failing to adjudicate [] Child dependent, under subsection (3) of the Juvenile Act's definition of "dependent child," where [Maternal Uncle] proved by clear and convincing evidence that [] Child has been abandoned by his parents?

2. Whether the lower court erred in failing to adjudicate [] Child dependent, under subsection (4) of the Juvenile Act's definition of "dependent child," where [Maternal Uncle] proved by clear and convincing evidence that [] Child is without a parent[, guardian, or legal custodian?]

Maternal Uncle's Brief at 4 (unnecessary capitalization and suggested answers omitted).

We consider this issue mindful of the following.

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.
>
> Furthermore, "[i]t is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record."

---

[2] When filing his notice of appeal, Maternal Uncle simultaneously filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

* * *

Dependency must be proven by clear and convincing evidence, which is defined as evidence "that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'"

*In re J.C.*, 5 A.3d 284, 287–88 (Pa. Super. 2010) (citations omitted). "[T]he dependency of a child is not determined 'as to' a particular person, but rather must be based upon two findings by the trial court: whether the child is currently lacking proper care and control, and whether such care and control is immediately available." *Id.* at 289.

The relevant portions of the Juvenile Act provide that a "dependent child" is one who

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

42 Pa.C.S.A. § 6302.

Maternal Uncle first argues that the testimony provided clear and convincing evidence that Child was abandoned by his parents. Maternal Uncle's Brief at 14-15. Although the Juvenile Act does not define "abandoned" in the context of a dependent child, Maternal Uncle argues that

the juvenile court and this Court should consider and use the definition codified in the Adoption Act.[3] *Id.* at 12-13.

The juvenile court found Child was not abandoned by his parents.[4] Furthermore, when reviewing 42 Pa.C.S.A. § 6302(3), the court noted that "the question is not only whether the child has been abandoned by his parents … but also if he has been abandoned by [his parents, guardian,] **or** other custodian." Juvenile Court Opinion, 7/25/2016, at 8 (emphasis added). The juvenile court found, and Maternal Uncle concedes, that Maternal Uncle stands *in loco parentis* to Child and therefore is considered Child's custodian under the Juvenile Act.[5] **See id.** at 8 ("[Maternal Uncle]

---

[3] Specifically, Maternal Uncle cites 23 Pa.C.S. § 2511(a)(1) averring that in the context of termination of parental rights, "abandonment occurs where a parent evidences 'a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" Maternal Uncle's Brief at 13.

[4] In its opinion pursuant to Pa.R.A.P. 1925(a), the court explained that it found based on "the facts in this case, [Child] has not been abandoned by his parents. They have not cut off relations and they have attempted to fulfill their obligations by ensuring that [Child] had an opportunity to travel to a more desirable location and was placed with [Maternal Uncle] in the United States." Juvenile Court Opinion, 7/25/2016, at 7.

[5] 42 Pa.C.S. § 6302 defines custodian as "[a] person other than a parent or legal guardian, who stands *in loco parentis* to the child, or a person to whom legal custody of the child has been given by order of a court." In its opinion pursuant to Pa.R.A.P. 1925(a), the court explained that it found based on "the facts in this case, [Child] has not been abandoned by his parents. They have not cut off relations and they have attempted to fulfill their obligations by ensuring that [Child] had an opportunity to travel to a more desirable location and was placed with [Maternal Uncle] in the United States." Juvenile Court Opinion, 7/25/2016, at 7.

- 5 -

has assumed the obligations incident to the parental relationship and discharges the parental duties to [Child]. [Maternal Uncle] feeds [Child], he clothes him, he provides him a home, and he sends him to school. … [Maternal Uncle, Child's] custodian, has not abandoned him[.]").

We agree with the juvenile court that Child was not abandoned under subsection 3 because he was, and continues to be under the care of his custodian, Maternal Uncle. Maternal Uncle's contention that he became Child's custodian **because** Child's parents abandoned him is of no moment, as the statute is clear that a dependent child is one who has been abandoned by his parents, guardian, **or** other custodian.

Maternal Uncle tries to persuade this Court that Child is dependent because the use of "or," a disjunctive, would imply that Child is considered dependent if he were found to be abandoned by either his parents, guardian, or custodian. We disagree. It is well-settled that "our rules of statutory construction forbid[] absurd results[.]" ***Commonwealth v. Sloan***, 907 A.2d 460, 467 (Pa. 2006). As stated *supra*, integral to deeming a child dependent, a court's finding must be based upon "whether the child is currently lacking proper care and control, and whether such care and control is immediately available." ***In re J.C.***, 5 A.3d at 288. Here, there is no indication that Child is currently lacking the proper care while living with

---

[5] 42 Pa.C.S. § 6302 defines custodian as "[a] person other than a parent or legal guardian, who stands *in loco parentis* to the child, or a person to whom legal custody of the child has been given by order of a court."

- 6 -

Maternal Uncle. To the contrary, the juvenile court found that Maternal Uncle and his wife take care of all of Child's needs, including providing food, shelter, clothing, and education. Juvenile Court Opinion, 7/25/2016, at 8. Adopting Maternal Uncle's interpretation would require us to find that any child who has been abandoned by his parents, guardian, or custodian is considered dependent even if they are currently under the care of one of the enumerated parties who has not abandoned, and has no intention of abandoning the child. This interpretation leads not only to an absurd result, but is contrary to the purpose of the law.

As observed by the lower court, Maternal Uncle requested that, upon a finding that Child is dependent, Child be returned to Maternal Uncle's care. Juvenile Court Opinion, 7/25/2016, at 4. Clearly, Maternal Uncle has not abandoned Child and has no intention of doing so. No relief is due.

Maternal Uncle alternatively argues that Child is dependent pursuant to subsection (4) because Child is without a parent, guardian, or legal custodian. Maternal Uncle's Brief at 19. Maternal Uncle avers that he is neither Child's guardian nor legal custodian under the law, and based on the evidence presented, Child is "for all practicable purposes, without a parent." *Id.* at 20-21.

In finding Child was not without parents, the juvenile court provided the following analysis.

> [C]hild's parents are alive, their locations are known, and they were both served and contacted by counsel in connection

> with [the dependency petition. C]hild continues to have contact with his father by phone three times a week. The definition of "[d]ependent [c]hild" in subsection (4) provides dependency only if the child is without a parent; there is no additional language to provide that a child might be without a parent because of physical distance, country borders, or the dangers of his native environment. Giving the words of the statute their plain meaning, we must conclude that as long as a parent is alive and his or her whereabouts are known, the child is not without a parent. Accordingly, [Maternal Uncle] has not established by clear and convincing evidence that [Child] is without a parent.

Juvenile Court Opinion, 7/25/2016, at 9.

Furthermore, Child's parents joined in the petition for reconsideration in this case. In agreeing with the juvenile court's interpretation of subsection (4), we note Maternal Uncle has provided us with no case law to support his argument that, because Child's parents are in El Salvador and have not seen nor provided support to Child since he arrived in the United States, Child is without parents.

Furthermore, we find the Juvenile Act permits a court to find a child dependent when clear and convincing evidence establishes that a child has been abandoned by his parents (subsection (3)) or is without parents (subsection (4)). Here, Maternal Uncle has failed to provide such evidence.[6]

---

[6] Indeed, counsel for Maternal Uncle conceded that Child does in fact have parents. *See* N.T., 5/13/2016, at 52-53 ("[Y]es, I realize that [Child] has parents. They are two people. They are alive. They live in another country. I successfully served them with mail. I get it. They exist. … I am arguing that they have abandoned him, and they are not parents for any purpose under this [A]ct".).

In light of the foregoing, we agree with the juvenile court's conclusion that Child is not dependent. Accordingly, we affirm the order of the juvenile court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2017